UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEVEN P. FAGNANT,

                              Plaintiff,

        v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                              Defendant.

Case No. 3:16-cv-05296-KLS

ORDER AFFIRMING DEFENDANT'S
DECISION TO DENY BENEFITS

        Plaintiff has brought this matter for judicial review of defendant's denial of his

applications for disability insurance and supplemental security (SSI) benefits. The parties have

consented to have this matter heard by the undersigned Magistrate Judge. 28 U.S.C. § 636(c),

Federal Rule of Civil Procedure 73; Local Rule MJR 13. For the reasons set forth below, the

Court finds defendant's decision to deny benefits should be affirmed.

                        FACTUAL AND PROCEDURAL HISTORY

        On July 8, 2005, plaintiff filed an application for disability insurance benefits and another

one for SSI benefits, alleging in both applications that he became disabled beginning March 15,

2003. Dkt. 9, Administrative Record (AR) 889. Both applications were denied on initial

administrative review and on reconsideration. *Id.*

        A hearing was held before an Administrative Law Judge (ALJ), at which plaintiff

ORDER - 1

appeared and testified. AR 808-40. In a written decision dated August 23, 2007, the ALJ found that plaintiff to be not disabled. AR 627-35. The Appeals Council granted plaintiff's request for review, vacating the ALJ's decision and remanding the matter for further administrative proceedings. AR 638-40.

On remand, another hearing was held before a different ALJ at which plaintiff appeared and testified. AR 841-74. At that hearing, plaintiff amended his alleged onset date of disability to July 20, 2002. AR 889. In a written decision dated October 28, 2008, that ALJ too found plaintiff to be not disabled. AR. 18-27. After the Appeals Council denied his request for review of the ALJ's decision, plaintiff appealed to this Court, which on April 5, 2012, remanded this matter for further administrative proceedings. AR 889, 912-13.

A third hearing was held before a third ALJ on remand, at which plaintiff appeared and testified, as did a medical expert. AR 990-1023. In a written decision dated April 17, 2013, that ALJ found plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. AR 923-42. The Appeals Council assumed jurisdiction of the matter and again remanded the matter for further administrative proceedings. AR 945-48.

A fourth hearing was held before the same ALJ, at which plaintiff appeared and testified, as did a vocational expert. AR 2112-2122. In a decision dated January 26, 2015, the ALJ again found plaintiff could perform other jobs existing in significant numbers in the national economy, and therefore that he was not disabled. AR 889-910. It appears that the Appeals Council did not assume jurisdiction of the matter, making the ALJ's decision the Commissioner's final decision, which plaintiff appealed to this Court. Dkt. 1; 20 C.F.R. § 404.984, § 416.1484.

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits, or in

ORDER - 2

the alternative for further administrative proceedings, arguing the ALJ erred:

>    (1)    in finding plaintiff did not have a physical or mental impairment that met or medically equaled the criteria of 20 C.F.R. Part 404, Subpart P, Appendix 1, § 1.04 (Listing 1.04) and § 12.04 (Listing 12.04);
>
>    (2)    in evaluating the medical opinion evidence;
>
>    (3)    in finding plaintiff to be not fully credible; and
>
>    (4)    in assessing plaintiff's residual functional capacity (RFC).

For the reasons set forth below, however, the Court disagrees that the ALJ erred as alleged, and thus finds the decision to deny benefits should be affirmed.

<u>DISCUSSION</u>

The Commissioner's determination that a claimant is not disabled must be upheld if the "proper legal standards" have been applied, and the "substantial evidence in the record as a whole supports" that determination. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *Carr v. Sullivan*, 772 F.Supp. 522, 525 (E.D. Wash. 1991). "A decision supported by substantial evidence nevertheless will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Carr*, 772 F.Supp. at 525 (citing *Brawner v. Sec'y of Health and Human Sers.*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *see also Batson*, 359 F.3d at 1193.

The Commissioner's findings will be upheld "if supported by inferences reasonably drawn from the record." *Batson*, 359 F.3d at 1193. Substantial evidence requires the Court to determine whether the Commissioner's determination is "supported by more than a scintilla of

ORDER - 3

evidence, although less than a preponderance of the evidence is required." *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," that decision must be upheld. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). That is, "[w]here there is conflicting evidence sufficient to support either outcome," the Court "must affirm the decision actually made." *Allen*, 749 F.2d at 579 (quoting *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971)).

I.      The ALJ's Step Three Determination

        The Commissioner employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. § 404.1520, § 416.920. If the claimant is found disabled or not disabled at any step thereof, the disability determination is made at that step, and the sequential evaluation process ends. *Id.* At step three of the process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1. 20 C.F.R § 404.1520(d), § 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

        If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. *Id.* The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. *Tacket*, 180 F.3d at 1098. "A generalized assertion of functional problems," however, "is not enough to establish disability at step three." *Id.* at 1100 (citing 20 C.F.R. § 404.1526).

        A mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508, § 416.908. It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." *Id.*; *see also* Social Security

ORDER - 4

Ruling (SSR) 96-8p, 1996 WL 374184, at *2 (the determination that is conducted at step three must be made on the basis of medical factors alone). An impairment meets a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248, at *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least equivalent in severity to the set of medical findings for the listed impairment." *Id.*; *see also Sullivan v. Zebley*, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original). However, "symptoms alone" will not justify a finding of equivalence. *Id.* The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

The ALJ need not "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings). This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. *Lewis v. Apfel*, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

ORDER - 5

As noted above, plaintiff argues the ALJ erred in finding he did not have an impairment that met or medically equaled the criteria of Listing 1.04 or Listing 12.04.[1] In regard to Listing 1.04, the ALJ found:

> Under [L]isting 1.04A, the claimant must show evidence of nerve root compression accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test. Under [Listing] 1.04B, the claimant must show evidence of spinal arachnoiditis. Under [Listing] 1.04C, the claimant must show evidence of lumbar spinal stenosis resulting in inability to ambulate effectively. There is no evidence of an inability to ambulate effectively, spinal arachnoiditis, or nerve root compression that has resulted in sensory or reflex loss.

AR 894. Plaintiff cites a number of treatment and other progress notes in the record to argue he meets or medically equals the criteria of Listing 1.04A, which as the ALJ notes reads:

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. As the ALJ points out, none of the treatment and other progress notes plaintiff cites reveal the existence of actual nerve root compression that Listing 1.04A requires. *See* Dkt. 14, pp. 7-10 (citing AR 172-73, 176-77, 179, 196, 198-99, 202, 247, 437, 440, 448, 457, 469, 730, 736, 1970, 2019, 2028, 2088). Nor has plaintiff shown that evidence is sufficient to establish medical equivalence to that aspect of Listing 1.04A. *Zebley*,

---

[1] Plaintiff also appears to argue the ALJ erred in failing to find he had a severe impairment of the spine or a severe mental impairment. Dkt. 14, pp. 7, 10. It seems, though, that this may not have been plaintiff's intent, given that the body of the section of plaintiff's opening brief discussing the ALJ's consideration of these impairments, focuses almost exclusively on the issue of whether they meet or medially equal a listed impairment. *See id.* at pp. 7-13. The ALJ, furthermore, did find plaintiff had severe spinal and mental health impairments, consisting of degenerative disc disease and a major depressive disorder. AR 893.

ORDER - 6

1    493 U.S. at 531 (1990) ("[A] claimant . . . must present medical findings equal in severity to all

2    the criteria for the one most similar listed impairment.").

3              With respect to Listing 12.04, the ALJ stated:

4              The severity of the claimant's mental impairment does not meet or medically
              equal the criteria of [L]isting 12.04. In making this finding, the undersigned
5              has considered whether the "paragraph B" criteria are satisfied. To satisfy the
              "paragraph B" criteria, the mental impairment must result in at least two of the
6              following: marked restriction of activities of daily living; marked difficulties
              in maintaining social functioning; marked difficulties in maintaining
7              concentration, persistence, or pace; or repeated episodes of decompensation,
              each of extended duration.
8

9    AR 894; *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04B.[2] Specifically, the ALJ found

10   plaintiff had only a mild restriction in activities of daily living, moderate difficulties in social

11   functioning and in concentration, persistence, or pace, and no episodes of decompensation. AR

12   894-95. Plaintiff points to a number of medical records, arguing they establish he is markedly

13   limited in at least two of these paragraph B criteria.

14

15             Most of what plaintiff points to, though, consists of diagnoses, observed symptoms, and

16   plaintiff's own self-reporting (*see* Dkt. 14, pp. 11-13 (citing AR 472, 485, 520, 757-63, 765-66,

17   1804, 1911, 1915, 1920, 1924, 1930, 1934, 1938, 1942, 1951, 2048, 2054-55, 2077, 2106)), as

18   well as documented medical visits (*see* AR 1908-90). Plaintiff does not cite or discuss evidence –

19   especially medical opinion evidence – indicative of marked restrictions or difficulties in work-

20   related functioning. Further, as discussed below, the ALJ did not err in finding plaintiff to be less

21   than fully credible, and therefore was not required to accept at face value his self-reporting. In

22

23

24   [2] With respect to each mental disorder contained in the Listings, 20 C.F.R. Part 404, Subpart P, Appendix 1,
     §12.00A states: "Each listing, except 12.05 and 12.09, consists of a statement describing the disorder(s) addressed
25   by the listing, paragraph A criteria (a set of medical findings), and paragraph B criteria (a set of impairment-related
     functional limitations). There are additional functional criteria (paragraph C criteria) in 12.02, 12.03, 12.04, and
26   12.06." The Commissioner assesses the "paragraph B criteria" before it applies the "paragraph C criteria," and will
     assess the "paragraph C criteria" only if it finds "that the paragraph B criteria are not satisfied." *Id.*

ORDER - 7

addition, the mere fact that plaintiff has received a diagnosis does not alone demonstrate listing-level severity or limitations equivalent thereto. *See Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir 2005) ("Conditions must not be confused with disabilities"; "[a] person can [experience symptoms,] yet still perform full-time work"); *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis of an impairment "says nothing about the severity of the condition").

II.     The ALJ's Evaluation of the Medical Opinion Evidence

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Where the evidence is inconclusive, "questions of credibility and resolution of conflicts are functions solely of the [ALJ]." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). In such situations, "the ALJ's conclusion must be upheld." *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" medical opinions "falls within this responsibility." *Id.* at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." *Reddick*, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* The ALJ also may draw inferences "logically flowing from the evidence." *Sample*, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755, (9th Cir. 1989).

ORDER - 8

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. *See Lester*, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." *Lester*, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." *Id.* at 830-31; *Tonapetyan*, 242 F.3d at 1149.

Here, plaintiff takes issue with the ALJ's following findings:

The undersigned gave some weight to the opinion of the claimant's treating physician H. Richard Johnson, M.D.[,] because of his treating relationship with the claimant. He opined in August 2005 that the claimant could perform sedentary work. During subsequent evaluations, Dr. Johnson opined that the claimant was physically capable of light duty work after a six-eight week course of work conditioning; however, his depression was so severe as to

1
2
3
4
5
6
7

render him unemployable on a regular and continuing basis. In February 2009, Dr. Johnson's opinion changed to stating that the claimant was permanently disabled. In May 2010, Dr. Johnson opined that the claimant was "permanently unemployable." The undersigned gave weight to Dr. Johnson's opinions regarding the claimant's physical abilities because of his specialty as an orthopedist. However, Dr. Johnson's ultimate opinion that the claimant is disabled appears to be based on his assessment of the claimant's mental functioning, which is an area outside of his expertise. Additionally, his opinions regarding permanent disability and unemployability also appear in the record to be based on factors unrelated to the claimant's functional abilities such as his current unemployment. Finally, the issue of disability is an area reserved for the Commissioner to decide.

8

AR 905 (internal citations omitted).

9
10
11
12
13
14
15
16
17
18
19
20
21
22

        Plaintiff argues that because of the treatment relationship Dr. Johnson has with him, his opinions should be afforded great weight, but the ALJ both ignored and improperly discredited them. First, as clearly noted above, the ALJ did not ignore Dr. Johnson's opinions. Second, the ALJ's reasons for discounting them were proper. As the ALJ points out, medical source opinions are given no special significance to issues reserved to the Commissioner, including the ultimate issue of disability. *McLeod v. Astrue*, 640 F.3d 881, 884-85 (9th Cir. 2011) ("Although a treating physician's opinion is generally afforded the greatest weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability.") (citations omitted). And as defendant points out, Dr. Johnson was not plaintiff's treating physician,[3] but rather an orthopedic consultant, and thus plaintiff's mental functioning was outside his area of expertise. *See* AR 449, 456, 1916, 1925, 1934-35, 1942, 1951-52, 1960-61, 1970-71, 1981.

23
24
25
26

        Plaintiff further challenges the ALJ's following findings:

        The undersigned gave little weight to the opinion of [Jeff Hart, M.D.,] because his opinion is inconsistent with the treatment record as a whole. Dr. Hart opined in March 2012 that the claimant would not be able to return to work

---

[3] Although as noted above, it appears the ALJ was under this mistaken belief as well.

ORDER - 10

due to a combination of his emotional and physical problems. In October 2011, he had opined that the claimant was permanently and totally disabled. In July 2010, he had also opined that the claimant was a category five and should be awarded a pension. In January 2006, he also opined that the claimant was unemployable. Additionally, Dr. Hart's opinion as to disability and unemployability is ultimately an issue reserved to the Commissioner and does not provide an assessment of the claimant's functional abilities.

AR 908 (internal citations omitted). Plaintiff argues the ALJ erred in finding Dr. Hart's opinion was inconsistent with the treatment record as a whole. But while not all of the medical opinion evidence can be said to be necessarily inconsistent with Dr. Hart's opinion (*compare* AR 519-24, 1994-1995, 1999-2000, 2003-2007, 2048, 2082-2084, 2089, with 1795-99, 1800, 1807, 1809, 1812, 1814-16, 1820-29), plaintiff has not specifically challenged the ALJ's evaluation thereof. The weight of the medical opinion evidence in the record, furthermore, indicates plaintiff's mental health symptoms and limitations are far from disabling. AR 169-71, 547, 720-29, 758-61, 763, 1007-14, 1856-61, 1895-97, 1899-1903, 1993, 1998, 2010-18, 2038-42, 2070-79. Lastly, as discussed above, opinions as to the ultimate issue of disability is reserved to the Commissioner.

III.    The ALJ's Credibility Determination

Questions of credibility are solely within the control of the ALJ. *See Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). The Court should not "second-guess" this credibility determination. *Allen v. Heckler*, 749 F.2d 577, 580 (9th Cir. 1984). In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. *See id.* at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001).

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent

ORDER - 11

1    reasons for the disbelief." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996) (citation omitted).

2    The ALJ "must identify what testimony is not credible and what evidence undermines the

3    claimant's complaints." *Id.*; *see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Unless

4    affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the

5    claimant's testimony must be "clear and convincing." *Lester*, 81 F.2d at 834. The evidence as a

6    whole must support a finding of malingering. *See O'Donnell v. Barnhart*, 318 F.3d 811, 818 (8th

7    Cir. 2003).

8

9            In determining a claimant's credibility, the ALJ may consider "ordinary techniques of

10   credibility evaluation," such as reputation for lying, prior inconsistent statements concerning

11   symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273,

12   1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of

13   physicians and other third parties regarding the nature, onset, duration, and frequency of

14   symptoms. *Id.*

15

16           In this case, the ALJ found the medical record "fails to corroborate" his allegations of

17   disability. AR 901. A determination that a claimant's subjective complaints are inconsistent with

18   the objective medical evidence can satisfy the clear and convincing requirement. *Regennitter v.*

19   *Comm'r of Social Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1998). Plaintiff argues the record

20   shows he has a severe depressive disorder, and that it is not uncommon for someone with such a

21   disorder to have periods where they do not do well. But as discussed above, the ALJ did not err

22   in evaluating the medical opinion evidence in the record. Accordingly, this was a valid basis for

23   finding plaintiff to be not fully credible.

24

25           The ALJ next discounted plaintiff's credibility on the basis that his activities of daily

26   living "reflect the need for no greater degree of limitation than set forth in his residual functional

ORDER - 12

capacity" discussed below. AR 901. Plaintiff does not challenge this basis for discounting his credibility, and accordingly here too the Court finds no error. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (the ALJ may use "daily activities to form the basis of an adverse credibility determination").

The ALJ also discounted plaintiff's credibility because:

> The medical evidence of record also shows noncompliance with medication and treatment recommendations. In July 2004, he was discharged from physical therapy due to lack of compliance and only showing up for 3 out of 9 scheduled visits. In March 2009, he was discharged from psychotherapy because "he has been scheduled for, canceled, and rescheduled on four occasions . . . . [the claimant] is quite clear that regrettably he cannot be consistent with arriving at appointments". During his last authorization period with [Jeffrey Okey, Ph.D.], he also missed many appointments. These examples show an apparent disinterest on the part of the claimant in improving his symptoms and functioning and imply that his impairments have not been as debilitating as he now claims.

AR 902 (internal citations omitted). Failure to assert a good reason for not following a prescribed course of treatment "can cast doubt on the sincerity of the claimant's pain testimony." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Plaintiff does not contest the ALJ's summary of the above evidence, but points to other evidence of instances where he sought treatment. Dkt. 14, p. 14 (citing AR 2081-2082, 2097-98, 2101, 2105-2111). Nevertheless, the above instances of failure to *consistently* comply with prescribed treatment, constitutes a proper basis upon which the ALJ could find plaintiff was not fully vested in improving his condition.

Finally, the ALJ provided two additional bases for discounting plaintiff's credibility:

> The record also reflects many instances of the claimant stating that other factors were influencing his decision to return to work. For example, in January 2006, he stated to one provider "but who's going to hire me with my legal record? That's my main problem. I know that every good company does a background check". The record also shows that the claimant may be letting his belief that he is disabled overshadow his actual functional abilities. For example, in December 2008, Dr. Okey noted that the claimant for his part had a "very firmly, deeply held disability conviction" regarding his functional

ORDER - 13

abilities. In March 2009, Dr. Okey noted that the claimant "is firmly entrenched in a longstanding state of vocational disability and from a psychological perspective well entrenched in total disability conviction. He is seeking to go on a pensions [sic] status . . . the only thing that would have any possible benefit in helping him would be the intensity of an interdisciplinary pain rehabilitation program though it is extremely clear that he would not be able to participate in one owing to his perception of his inability and/or unwillingness to experience any increased discomfort".

Inconsistencies in the claimant's reports regarding his past polysubstance abuse casts further doubt on the reliability of his statements. For example, in May 2004, Ronald Shubert, M.D.[,] noted that "prior to [sic] visit I contacted Dr. Brown's office and discovered that he is getting Vicodin there every 12-15 days number 90 at a time. My records show that he states that he is not getting medication from other physicians. Upon discussing this with [sic] patient, he denied initially that he was getting medication from Dr. Brown but then later confirmed it. Because I feel he has been lying all along I am no longer given [sic] him any further narcotics. I suspect that he has been selling his medication to others".

AR 902-03 (internal citations omitted). Plaintiff does not challenge either of these bases, and the Court finds they both were properly relied on by the ALJ here. *Edlund v. Massanari*, 253 F.3d 1152, 1157 (9th Cir. 2001) (the ALJ properly considered claimant's drug-seeking behavior); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (the ALJ may consider motivation and issues of secondary gain); *Matney on Behalf of Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (same).

IV.     The ALJ's Assessment of Plaintiff's RFC

A claimant's RFC assessment is used at step four of the sequential disability evaluation process to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. SSR 96-8p, 1996 WL 374184 *2. It is what the claimant "can still do despite his or her limitations." *Id.* A claimant's RFC is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. *Id.*

ORDER - 14

An inability to work, however, must result from the claimant's "physical or mental impairment(s)." *Id.* Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." *Id.* In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." *Id.* at *7.

The ALJ found plaintiff had the RFC:

> **to lift or carry 20 pounds occasionally and 10 pounds frequently; he could stand or walk for two hours in an eight-hour workday but for no longer than one hour at a time; he could sit for six to eight hours in an eight-hour workday but for no longer than three hours at a time and would need a stretch break after sitting for 30 minutes for five minutes; he could occasionally climb, stoop, kneel, crouch, or crawl; he could occasionally reach overhead bilaterally; he could frequently, but not constantly, handle and finger bilaterally; he is limited to simple, routine, and repetitive tasks; he can have no public contact and occasional coworker contact and supervisory contact with no teamwork.**

AR 895 (emphasis in the original). Plaintiff argues his documented ongoing mental and physical difficulties are inconsistent with the above RFC assessment. As discussed above, however, the ALJ did not err in evaluating the medical evidence in the record or in finding plaintiff to be less than fully credible. Accordingly, plaintiff has not shown the ALJ's RFC assessment to be invalid on this basis. Plaintiff also argues that "[a]ccording to vocational experts, a worker consistently off task 10% of the workday" – which he asserts the need to stretch for five minutes every 30 minutes would result in – "would not be able to maintain competitive employment." Dkt. 14, p. 17. But plaintiff provides no actual vocational expert testimony to support this assertion, and his conclusory statement is insufficient to establish error here.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court finds the ALJ properly determined plaintiff

ORDER - 15

to be not disabled. Defendant's decision to deny benefits therefore is AFFIRMED.

DATED this 5th day of January, 2017.

Karen L. Strombom
United States Magistrate Judge

ORDER - 16